**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **FLAGSTAR BANK, FSB,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**JIM E. SMITH, JR., a/k/a Jimmy Smith, and** )<br>**KELLY A. SMITH,** )<br>)<br>**Defendants.** )<br>_____) | **Civil Action No. 2011-0078** |

**Attorneys:**
**A. Jennings Stone, Esq.,**
St. Thomas, U.S.V.I.
    *For Plaintiff*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the Motion for Default Judgment filed by Plaintiff Flagstar Bank, FSB ("Flagstar") against Defendants Jim E. Smith, Jr., a/k/a Jimmy Smith, and Kelly A. Smith (collectively, the "Smiths"). (Dkt. No. 12). For the reasons discussed below, the Court will grant Plaintiff's Motion for Default Judgment.

**BACKGROUND**

On August 9, 2011, Flagstar filed a Complaint against the Smiths, alleging causes of action for debt and foreclosure of real property mortgage. (Dkt. No. 1). Flagstar asserts that the Smiths defaulted on a Promissory Note and on a Mortgage regarding certain property ("the Property") described as:

> Plot No. 12-CF Estate Montpellier, Queen Quarter, St. Croix, US Virgin Islands, consisting of 0.503 US acre, more or less, as more fully shown on OLG Drawing No. 4503 dated November 25, 1988 and revised May 17, 1989.

(Compl. ¶ 6, Dkt. No. 1). The Complaint alleges that, on December 3, 2007, the Smiths executed and delivered to Flagstar a promissory note (the "Note"), which obligated them to pay the principal amount of $319,197.00, together with interest at a rate of 6.375% per annum, in consecutive monthly installments of $1,991.39 beginning February 1, 2008. *Id.* ¶¶ 7-8. To secure payment on the Note, the Smiths granted to Flagstar and Mortgage Electronic Registration Systems, Inc. ("MERS") a first priority mortgage dated December 3, 2007 over the Property (the "Mortgage"), which provided that the Smiths would pay to Flagstar the payments due under the Note. *Id.* ¶¶ 9-10.

The Complaint further alleges that, on or about November 1, 2010, the Smiths defaulted under the terms and conditions of the Note, and also defaulted under the terms and conditions of the Mortgage, in that monthly installments of principal and interest became due and were not paid; that Flagstar gave notice of default to the Smiths by correspondence dated December 18, 2010, advising them that failure to cure the default would result in acceleration of the debt and foreclosure of the mortgage lien; and that, as of the date of the Complaint, the default had not been cured. *Id.* ¶¶ 11-15. On May 24, 2011, MERS assigned its entire interest in the Property to Flagstar (the "MERS Assignment"). *Id.* ¶ 16.

As to the debt cause of action, the Complaint provides that the Smiths owe Flagstar the sum of $308,210.60 in unpaid principal balance; accrued interest from October 1, 2010 to May 13, 2011 in the amount of $12,107.55; late charges in the amount of $957.98; plus assessed fees in the amount of $31.50; and a total amount due of $321,307.63. *Id.* ¶ 22. Flagstar further asserts that, under the terms of the Mortgage, it is entitled to be reimbursed for any insurance premiums, taxes, or other charges that it pays with regard to the Property, and that under the terms of the Note and Mortgage, it is entitled to be reimbursed for reasonable attorney's fees and other

expenses it has incurred to enforce payment of the Note or incidental to foreclosure of the Property. *Id.* ¶¶ 24, 25.

With regard to the foreclosure cause of action, the Complaint provides that Flagstar is the holder of the Mortgage, allowing it to maintain the foreclosure action; that the Smiths are in default under the terms and conditions of the Note and Mortgage; and that Flagstar is entitled to foreclose its lien on the Property, sell the Property to satisfy the Note, and recover any deficiency from the Smiths. *Id.* ¶¶ 28-30.

The Smiths were served personally with a copy of the Summons and Complaint on August 30, 2011. (Dkt. Nos. 5, 6). They have neither answered the Complaint nor appeared in this action. On October 3, 2011, Flagstar filed an Application for Entry of Default against the Smiths. (Dkt. No. 7). The Clerk of Court entered default against both Defendants on the same day. (Dkt. No. 9).

On August 2, 2013, Flagstar filed its Motion for Default Judgment (the "Motion") (Dkt. No. 12), along with a Memorandum in Support (Dkt. No. 13), an Affidavit of Indebtedness (Dkt. No. 14), and a Declaration of Counsel in Support of Attorney's Fees. (Dkt. No. 15). In its Motion, Flagstar seeks: (1) a default judgment for debt against the Smiths for the entire amount due under the Note, plus expenses, interest, and attorney's fees; and (2) foreclosure against the Smiths.

Flagstar argues that the procedural elements for default judgment have been satisfied because: the Smiths were properly served with copies of the Summons and Complaint; the Clerk entered default against them; and they are not infants or incompetent persons, nor in the military service. (Dkt. No. 13 at 6-7). Flagstar further contends that the pleadings in this action provide a sufficient basis for entry of default judgment on the merits of its claims, as the documentation

shows that the Smiths executed the Note and Mortgage; Flagstar has possession of the original Note and is holder of the Mortgage in its own right and by way of the MERS Assignment; the Smiths defaulted under the terms of the Note and Mortgage; Flagstar gave the Smiths proper notice of the default and they failed to cure that default; and Flagstar elected to accelerate the amounts due and owing upon default, and foreclose on the Property. *Id.* at 7. In addition, Flagstar asserts that it has demonstrated its entitlement to default judgment under the factors set forth in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). *Id.* at 7-10.

In support of the Motion, Plaintiff filed an Affidavit of Indebtedness, signed by Serge Alexis, a Flagstar Foreclosure Analyst, who explained how the Bank's document management system keeps track, and maintains records, of debit and credit transactions related to the Mortgage and original Note. (Dkt. No. 14 ¶¶ 3-8). The Affidavit sets forth the amounts due and owing through June 30, 2013: $308,210.60 in unpaid principal balance; interest from October 1, 2010 through June 30, 2013 of $53,956.95; escrow advances of $12,079.49 comprised of Flagstar's payment of property insurance and property taxes, for a total of $374,247.04. *Id.* ¶ 10. In addition, the Affidavit provides that $957.98 in accumulated late fees have been incurred, and explains how those fees were calculated. *Id.* ¶ 11. The Affidavit also explains how $341.50 for inspections and other property preservation fees was incurred, and provides documentation supporting those fees. The Affidavit provides that the Smiths owe the total sum of $375,327.81 through June 30, 2013. *Id.* ¶¶ 12, 13. Mr. Alexis asserts that interest accrues at the per diem rate of $53.83. *Id.* ¶ 14.

Included as an exhibit to the Affidavit of Indebtedness was a reprint of searches conducted on the Department of Defense Manpower Data Center website on June 19, 2013 which revealed that the Smiths were not in the military service as defined in the

4

Servicemember's Civil Relief Act of 2003, 50 App. U.S.C. § 521. (Dkt. No. 14, ¶ 16, Dkt. No. 14-8). Mr. Alexis further declared that, "[b]ased upon the information I have reviewed in connection with the Subject Loan, I have no information indicating that the Defendants are minors or are incompetent." (Dkt. No. 14 ¶ 16).

In the Declaration of Counsel in Support of Costs and Attorney's Fees, Flagstar's counsel, A. Jennings Stone, Esq., averred that he, as a Senior Associate, billed $250.00 per hour on this matter, and that Carol Hart, a paralegal, billed $125.00 per hour and Lola Pierre, a paralegal, billed $60.00 per hour. (Dkt. No. 15). He attached a memorandum of costs showing that the total time spent on this matter was 15.25 hours through August 2, 2013; that the total amount of attorney's fees incurred was $3,388.75; and the total amount of costs expended was $819.14. *Id.* & Dkt. No. 15-1.

## APPLICABLE LEGAL PRINCIPLES

In an application for an entry of default judgment, the Court accepts as true any facts contained in the pleadings regarding liability. Fed. R. Civ. P. 8(b)(6). Legal conclusions, however, are not deemed admitted, nor are the extent and amount of damages claimed by a party. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005); Fed. R. Civ. P. 8(b)(6). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951).

An application for entry of default judgment must contain evidence, by affidavits and/or documents, of the following:

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an

> affidavit of non-military service in compliance with the [Servicemember's] Civil Relief Act.

*Bank of Nova Scotia v. Abdallah,* 2013 WL 5312399, at *5 (D.V.I. Sept. 23, 2013) (quoting *Idewu v. Sealey*, 2012 U.S. Dist. LEXIS 36783, at *6 (D.V.I. Mar. 19, 2012)); *see also* Fed. R. Civ. P. 55(b); *Island Yacht Charters, Inc. v. Malgaglio,* 2009 WL 1507406, at *1 (D.V.I. May 28, 2009). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 528 F.2d 192, 195 (3d Cir. 1984)).

## ANALYSIS

### A. Default Judgment

Flagstar has satisfied all of the requirements necessary to obtain a default judgment against the Smiths. It has shown that: (1) default was entered against the Smiths by the Clerk of Court (Dkt. No. 9); (2) the Smiths have not appeared; (3) the Smiths are neither infants nor incompetent persons (Dkt. No. 14, ¶ 16; *see also* Affidavit of Process Server, describing Jim E. Smith as 40 years old, Dkt. No. 5-1); and (4) the Smiths were validly served with process. (Dkt. Nos. 5, 6). In addition, Flagstar provided copies of two Military Status Reports from the Department of Defense Manpower Data Center showing that the Smiths are not in the military service as defined in the Servicemember's Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. No. 14-8). Flagstar has also shown with specificity how it calculated the amount of the judgment. (Dkt. No. 14).

Finally, the Court has considered the *Chamberlain* factors and finds that the prejudice to Flagstar resulting from the Smiths' breach of their contractual obligations, together with the

apparent absence of a litigable defense, weighs in favor of the Court granting default judgment. In addition, the Smiths' default was a result of their culpable conduct as evidenced by their refusal to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint). Consequently, default judgment is appropriate.

### B. Attorney's Fees and Costs

Title 5 of the Virgin Islands Code, Section 541(b), governs the award of attorney's fees in the Virgin Islands. The statute states, in pertinent part: "The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties . . . ." 5 V.I.C. § 541(b). Under both the terms of the Note and Mortgage, the Bank may recover "reasonable" attorney's fees. (Dkt. No. 14-1, ¶ 6(E); Dkt. No. 14-2, ¶ 19). The Court will look to the body of case law interpreting 5 V.I.C. § 541(b) for guidance in assessing what attorney's fees may be "reasonable." *Flagstar Bank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013).

"To determine a fair and reasonable award of attorneys' fees [under § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin*

*Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10.

Flagstar seeks $3,388.75 in attorney's fees as compensation for 15.25 hours of work billed in this matter. The Court finds that the number of hours billed was reasonable in this run-of-the-mill default judgment debt and foreclosure case. *See, e.g., Nationstar Mortgage, LLC v. Wilcox,* 2013 WL 3376719, at *5 (D.V.I. July 5, 2013) (awarding $3.337.50 in attorney's fees where counsel spent a total of 13.85 hours on the case).

With regard to the second step of assessing the reasonableness of attorney's fees—whether the hourly rate sought is reasonable—Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). Flagstar has also provided affirmations from three Virgin Islands attorneys who aver that the typical hourly rate charged by attorneys in the Virgin Islands is between $250.00 and $300.00 per hour. (Dkt. Nos. 13-3, 13-4, 13-5). The Court therefore concludes that the $250.00 per hour rate charged by Flagstar's attorney is reasonable and falls within the scope of rates for such services. (Dkt. No. 15).

Based on the foregoing, the Court concludes that the $3,388.75 sought in attorney's fees is reasonable and will be awarded by the Court.

With regard to costs, under the terms of the Mortgage, the Smiths agreed to "pay[] all expenses incurred in enforcing this Security Instrument. . ." (Dkt. No. 14-2, ¶ 19). The Court infers that in order for costs to be reimbursed, they must be reasonable. *Cf. Lewis v. Mazda Motor of Am.,* 2012 U.S. Dist. LEXIS 180222, at *7 (D.V.I. Dec. 20, 2012) (awarding reasonable costs in discovery dispute); *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *3 (D.V.I. Dec. 20, 2007) (opining that Virgin Islands fee-shifting statute governing the award of attorney's fees and costs permits reimbursement for reasonable fees and costs). The Bank is seeking reimbursement of $819.14 for the following costs: title search, recording and filing fees, on-line searches on Accurint (People/Business search), messenger service, postage, and process server fees. (Dkt. No. 15-1 at 2-3). The Court finds that these costs are reasonable, and—pursuant to the plain language of the Mortgage contract—will award costs in the amount of $819.14.

## CONCLUSION

Flagstar has satisfied the requirements necessary for entry of a default judgment against Jim E. Smith, Jr., a/k/a Jimmy Smith, and Kelly A. Smith. Accordingly, Plaintiff's Motion for Default Judgment (Dkt. No. 12) will be granted. The Court will award $3,388.75 in attorney's fees and $819.14 in costs, for a total of $4,207.89 in attorney's fees and costs.

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: January 28, 2014                    _____/s/_____
                                          WILMA A. LEWIS
                                          Chief Judge